## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES MAY and JEAN JAMES, individually and on behalf of all others similarly situated | * * * * | |
| Plaintiffs, | * * | CASE NO. 3:20-cv-394-DPJ-FKB |
| versus | * * | |
| ENCOMPASS HEALTH CORP., ENCOMPASS HOME HEALTH OF THE SOUTHEAST, LLC, ADVANCED HOMECARE MANAGEMENT, INC., WEST MISSISSIPPI HOME HEALTH SERVICES, INC. and CAMELLIA MEDICAL SYSTEMS, INC. | * * * * * * * | |
| Defendants. | * * | COLLECTIVE ACTION |

## FIRST AMENDED COMPLAINT – COLLECTIVE ACTION

Plaintiffs, James May and Jean James, individually and on behalf of all other similarly situated current and former employees of Defendants bring this collective action against Encompass Health Corp., Encompass Home Health of the Southeast, LLC, Advanced Homecare Management, Inc., West Mississippi Home Health Services, Inc. and Camellia Medical Systems, Inc. and allege as follows:

## OVERVIEW

1. Plaintiffs, James May and Jean James, bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* to recover unpaid overtime compensation under §216(b) of the FLSA. Plaintiffs bring these claims as a collective action on behalf of themselves and all current and former employees employed by Defendants during the last three (3) years, who were paid a "salary" that was subject to the "Productivity Requirements per Week" provision contained in

1

"The Encompass Health Way" employee handbook which required these workers to perform a certain number of patient visits every week, for which they were awarded "points," and who were not paid overtime for all hours worked in excess of forty (40) hours in a work week. These workers are hereinafter referred to as "Collective Members."

2.  Defendants West Mississippi Home Health Services, Inc. and Camellia Medical Systems, Inc. were Plaintiffs direct employers, and Defendants Encompass Health Corp., Encompass Home Health of the Southeast, LLC, and Advanced Homecare Management, Inc., became joint employers after acquiring West Mississippi Home Health Services, Inc. and Camellia Medical Systems, Inc. on or about May 1, 2018.

## JURISDICTION AND VENUE

3.  This Court has federal question jurisdiction under 28 U.S.C. §1331 as this case is brought pursuant to the FLSA, 29 U.S.C. §201, *et seq.*

4.  Venue is proper in this District under 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to the claims at issue in this case occurred in this district.

## PARTIES

**Plaintiffs**

5.  Plaintiff James May ("May") is a major individual, domiciled in Simpson County, Mississippi. May has consented to the filing of the instant action (Exhibit "A").

6.  Plaintiff Jean James ("James") is a major individual, domiciled in Lamar County, Mississippi. James has consented to the filing of the instant action (Exhibit "B").

**Defendants**

7.    Together, Defendants have employed Plaintiffs and Collective Members as a single enterprise and participated in employment decisions regarding the rights for which Plaintiffs and those similarly situated seek redress in this case.

8.    Encompass Health Corporation ("EHC") is a Delaware corporation with its principal place of business at 9001 Liberty Parkway, Birmingham, AL 35242.  EHC is a for-profit corporation, in good standing authorized to do and doing business within the State of Mississippi and can be served through its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

9.    Advanced Homecare Management, Inc. ("AHM") is a Delaware corporation with its principal place of business at 9001 Liberty Parkway, Birmingham, AL 35242.  AHM is a for-profit corporation, in good standing authorized to do and doing business within the State of Mississippi and can be served through its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

10.    Encompass Home Health of the Southeast, LLC ("EHHS") is a Florida corporation with its principal place of business at 9001 Liberty Parkway, Birmingham, AL 35242.  EHHS is not authorized to do but nonetheless is conducting business within the state of Mississippi.

11.    West Mississippi Home Health Services, Inc. ("West Mississippi") is a Mississippi corporation with its principal place of business located at 9001 Liberty Parkway, Birmingham, AL 35242, which may be served through its registered agent, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

12.     Camellia Medical Systems, Inc. ("CMS"), formally known as Medical Systems, Incorporated, is a Mississippi corporation located at 135 Mayfair Road, Hattiesburg, MS 39402, with its principal place of business located at 9001 Liberty Parkway, Birmingham, AL 35242.

13.     Plaintiff May was directly employed by Defendants West Mississippi and CMS from approximately 1991 through May 1, 2018 as a physical therapist who provided physical therapy services at a patient's location. May continued working for West Mississippi and CMS after EHC and/or EHHS acquired West Mississippi and CMS on May 1, 2018 at which time all Defendants were May's joint employers until his departure in March, 2019.

14.     Plaintiff James was directly employed by Defendants West Mississippi and CMS from approximately 2014 through May 1, 2018 as an occupational therapy assistant who provided occupational therapy services at a patient's location. James continued working for West Mississippi and CMS after EHC and/or EHHS acquired West Mississippi and CMS on May 1, 2018 at which time all Defendants were James's joint employers until his departure in June, 2018.

15.     CMS is presently and, at all relevant times, was the parent company of several home health agencies located in Mississippi, Tennessee, Louisiana and Georgia which were collectively known as "Camellia Home Health & Hospice." These agencies include Defendant West Mississippi, Camellia Home Health of the Gulf Coast, LLC, a Mississippi corporation, Camellia Home Health of East Tennessee, LLC which identified its principal office address as 20 Rawls Spring Loop, Hattiesburg, MS 39402 and then 135 Mayfair Road, Hattisburg, MS 39402, until 2018 when it assumed the name "Encompass Health Home Care" and changed its address to 9001 Liberty Parkway, Birmingham, AL, and Home Healthcare of Bogalusa, Inc., a Delaware corporation whose principal place of business was Bogalusa, LA. These entitles are collectively hereinafter be referred to as the "Camellia companies."

4

16.    According to the Camellia Home Health & Hospice employee handbook, the company description is as follows:

> The company was established in 1974 as Home Health Care of Mississippi and Medical Systems, Inc. throughout the years, additional agencies and offices have been opened.  In January, 2005, the companies were renamed Camellia Home Health and Hospice.   The corporate office is located in Hattiesburg, Mississippi and provides clinical management, billing, human resources, payroll and accounting functions to each of the healthcare facilities.

17.    On or about May 1, 2018, EHC acquired the Camellia Home Health & Hospice companies including West Mississippi and CMS either directly or through its wholly owned subsidiary EHHS.

18.    According to EHC's 2018 Annual Report, Encompass, described the Camellia acquisition as follows:

> On May 1, 2018 we completed the acquisition of privately owned Camellia Healthcare and affiliated entities ("Camellia"). The Camellia portfolio consisted of 18 Hospice, 14 Home Health and 2 Private Duty locations in Mississippi, Alabama, Louisiana and Tennessee.  The Camellia acquisition leveraged our home health and hospice operating platform across key certificate of need states and strengthened our geographic present in the Southeastern United States.   We funded the cash purchase price of the acquisition with cash on hand and borrowing under our revolving credit facility.  We expect to realize a tax benefit with an estimated present value of $20 Million to $25 Million related to this transaction.

19.    According to EHC's 2018 Annual Report, EHC paid $131,400,000.00 for the acquisition of the Camellia companies.

20.    In 2018, EHC's Annual Report indicated net operating revenues received by EHC attributable to the Camellia companies at $50,000,000.00, much of which was generated within the State of Mississippi.

5

21.    As part of EHC's expansion into Mississippi, in April, 2017, EHC acquired 80% of the thirty-three (33) bed in-patient rehabilitation unit of Memorial Hospital at Gulfport in Gulfport, Mississippi, through a joint venture with Memorial Hospital at Gulfport.

22.    As of December 31, 2018, EHC stated in its Annual Report that it owned and operated twenty (20) home health and hospice locations in the state of Mississippi, which consisted primarily of the Camellia acquired companies.

23.    In 2019 EHC reported net operating revenues attributable to the Camellia companies of $50,000,000.00, as reported in its 2019 Annual Report.

24.    EHC claimed in its 2019 Annual Report that its goodwill increased in both 2018 and 2019 as a result of its acquisition of the Camellia companies and other in-patient and home health and hospice facilities.

**DEFENDANTS ARE JOINT EMPLOYERS**

25.    Plaintiffs, prior to May 1, 2018, were directly employed by West Mississippi, which was part of the Camellia Home Health & Hospice group of companies.

26.    In 2017, Plaintiffs received W2 forms issued by West Mississippi Home Health d/b/a Camellia Healthcare.

27.    Prior to May 1, 2018, Camellia, formally known as Medical Systems, Inc., was the corporate parent and home office for all Camellia companies, including West Mississippi.

28.    Prior to May 1, 2018, Camellia provided human resource services to all Camellia companies, including West Mississippi.

29.    Prior to May 1, 2018, Camellia controlled, managed and implemented payroll, methods of payment, FLSA classification determination and personnel decisions for all Camellia companies.

30.    In 2017 the U.S. Department of Labor (DOL) conducted an investigation of Medical Systems, Inc. and its subsidiaries, Camellia Home Health of the Gulf Coast, LLC, Home Health Care Systems, Inc, West Mississippi Home Health Services, Inc., Home Health Care of Bogalusa, Inc. and Camellia Home Health of East Tennessee, LLC and determined that Medical Systems, Inc. and its subsidiaries violated the FLSA.

31.    The DOL determined that Medical Systems, Inc. and these subsidiaries, violated the FLSA by improperly classifying registered nurses, physical therapists, occupational therapists and speech therapists, who were paid on a per-visit plus an hourly rate, as FLSA overtime exempt.

32.    As a result of the DOL investigation, CMS and West Mississippi reclassified these positions as FLSA non-exempt and began paying overtime in late 2017 or early 2018.

33.    After EHC and/or EHHS purchased the Camellia companies on May 1, 2018, EHC and/or EHHS integrated the Camellia companies into EHC's personnel, human resources and payroll system.

34.    At all times after May 1, 2018, EHC, EHHSW and AHM acted in concert, as a single enterprise and/or entity and/or alter ego of each other, regarding the Camellia company employees.

35.    EHC, EHHS and AHM's actions, policies and procedures affecting the Camellia company employees were adopted, ratified, implemented and enforced, and are thus imputable to EHC, EHHS and AHM collectively and individually.

36.    EHC, EHHS and AHM were controlled by common officers, directors, managers and employees.

37.    EHHS is a subsidiary owned and operated, managed and controlled by EHC.

38.    AHM is a subsidiary operated, managed, controlled and owned by EHC.

39.    EHC, EHHS and AHM all list 9001 Liberty Parkway, Birmingham, Alabama 35242 as their principal office addresses.

40.    EHC, EHHS and AHM share common officers, directors and board members.

41.    Douglas E. Coltharp is President of EHHS, Director and Vice President of AHM, and Vice President and Chief Financial Officer of EHC.

42.    Edmond M. Fay is Treasurer of EHHS and AHM and Treasurer and Vice President of EHC.

43.    Patrick Darby is Secretary of EHHS, Secretary and Vice President of EHC and Director, Secretary and Vice President of AHM.

44.    EHC and/or EHHS took control of the operations of the Camellia companies after the acquisition on May 1, 2018.

45.    West Mississippi and CMS also share common officers, directors and board members with EHC, EHHS and AHM.

46.    Douglas Coltharp is a Director and Vice President of CMS, Director and President of West Mississippi in addition to serving as Director and Vice President for AHM, President of EHHS, and Vice President and Chief Financial Officer of EHC.

47.    Barbara A. Jacobsmeyer is the Director and Vice President of CMS, Director and Vice President of West Mississippi, Vice President of EHC, and a Director and Vice President of AHM.

48.    Patrick Darby is a Director, Secretary and Vice President of CMS, Secretary and Vice President of EHC, Secretary of EHHS, and Vice President of AHM.

49.    Edmond M. Fay is the Treasurer of CMS, West Mississippi, AHM and EHHS.

50.    Chris A. Walker is the Chief Financial Officer of CMS and AHM.

51.     G. Robert Thompson is the Vice President of West Mississippi and EHHS.

52.     EHC, independently or in concert with its subsidiaries EHHS and AHM, acting through their employees, directors and officers merged the acquired Camellia companies, including West Mississippi and CMS on or about May 1, 2018 into EHC.

53.     On or about May 1, 2018, the Camellia companies, including West Mississippi and CMS, became subsidiaries of EHC.  EHC derived significant revenue and goodwill from the operations of the Camellia entities.

54.     After May 1, 2018, numerous individuals who identified themselves as employees of EHC, and whose email addresses contained "@encompasshealth.com", began conducting mandatory, in-person, job training and orientation for all employees of the Camellia companies, including West Mississippi.

55.     During this time, all Camellia company employees, including Plaintiffs, were required to complete new health insurance applications transferring their health insurance from the Camellia company provider to the EHC provider.

56.     EHC required the Camellia companies' employees to transfer their 401K retirement accounts from the Camellia companies to EHC.

57.     EHC required each Camellia company employee to undergo new training to implement what was referred to as the "Encompass Way" which included EHC's rules, regulations and procedures applicable to all its employees.

58.     EHC required the Camellia company employees to execute new confidentiality agreements.

59.     EHC required the Camellia company employees to execute new payroll tax forms.

60.    EHC issued each Camellia company employee a new handbook entitled "The Encompass Health Way" with the requirement that all policies and procedures in the handbook must be followed.

61.    EHC managed and controlled personnel decisions applicable to the Camellia company employees, including classification of the employees as full-time, hourly or PRN, or other classifications contained in the Encompass handbook.

62.    EHC implemented its own pay structure which resulted in a reduction in pay to many Camellia company employees.

63.    EHC required the Camellia company employees to purchase, at their own cost, Encompass uniforms that contained an Encompass logo which was required to be worn at all times, thus representing to the public that the Camellia company employees were actually employed by EHC.

64.    Encompass required the Camellia company employees to obtain new business cards with Encompass identified as the employees' employer.

65.    EHC removed all Camellia signage and replaced it with Encompass signs at all Camellia company locations.

66.    EHC replaced all Camellia company marketing materials with brochures and other materials in the name of Encompass.

67.    EHC provided human resource services and support to the Camellia company employees.

68.    EHC eliminated Camellia company employees' use of company cars and instead implemented a car allowance system.

69.     EHC restructured the Camellia company employees bonus amounts and process for determining bonuses.

70.     EHC, AHM and EHHS supervised and controlled the work activities, work schedules, conditions and management of all Camellia company employees.  Camellia company employees were subject to EHC, AMC and EHHS policies and procedures.

71.     EHC, AMC and EHHS had the authority to hire and fire the Camellia company employees.

72.     Camellia company employees were required to utilize EHC's forms for patient charting and payment.

73.     In 2018 and 2019, Plaintiff May's W2 Wage and Tax Statement was issued by Advanced Home Care Management, Inc., as agent for West Mississippi Health Care Services, Inc.

74.     In 2018 Plaintiff James's W2 Wage and Tax Statement was issued by Advanced Home Care Management, Inc., agent for West Mississippi Health Care Services, Inc.

75.     In 2018 and thereafter, AHM provided payroll services and support to the Camellia company employees.

76.     Upon separation of employment, Camellia company employees who requested termination benefits, including PDO, were required to make such requests to EHC and/or EHHS and/or AHM employees who would then decide what, if any, benefits were owed.

77.     Camellia company employees' termination benefits were governed by "The Encompass Health Way" handbook.

78.     The Camellia company employees were subject to the same terms and conditions of employment as EHC and/or EHHS employees who performed the same job duties as Plaintiffs and other Camellia company employees.

79.    The Camellia company employees were subject to all of the same personnel policies and procedures as other EHC employees.

80.    With full knowledge that the Camellia company employees were reclassified as FLSA overtime eligible by CMS, EHC and/or EHHS and/or AMC, implemented a "salary" pay system applicable to Plaintiffs and other Camellia company employees who worked as Registered Nurses (RN), Licensed Practical Nurses (LPN), Speech Therapists (ST), Physical Therapists (PT), Occupational Therapists (OT) in an effort to again reclassify these jobs as FLSA Professional exempt.

81.    After the implementation of this payroll change, all Camellia company employees were paid pursuant to the same system as EHC and/or EHHS employees who performed the same or similar job duties.

82.    However, the "salary" was dependent upon Plaintiffs and Collective Members reaching what the handbook described as "Productivity Requirements per Week" which was identified in the EHC employee handbook as:

## Productivity Requirements per Week
### (applies to Full-Time Field Staff)

| Discipline | Encompass Productivity (Minimum Points per Week) |
|---|---|
| RN | 27 - 30 |
| LN | 30 - 32 |
| PT, OT, SLP | 27 - 30 |
| PTA, COTA | 30 - 32 |
| MSW, CH | 25 - 30 |
| HHA | 30 - 32 |

83.    If an employee subject to the "Productivity Requirements per Week" requirement conducted visits above the minimum number, the employee would be eligible for an increase in pay based on "Visit Productivity Values" which approximated but did not accurately reflect the amount of time (in hours) each such visit was generally supposed to take as follows:

# Visit Productivity Values

| Visit & Activity Type | Encompass Home Health | Camelia Home Health | Encompass Hospice | Camelia Hospice |
|---|---|---|---|---|
| Admission | 2.5 | 2.0 | 2.5 | 2.0 |
| Resumption of Care | 2.0 | 1.5 | n/a | n/a |
| Non-OASIS Admission | 1.5 | 2.0 | n/a | n/a |
| Evaluation / Follow-up | 1.5 | 1.5 | 1.5 | SW 1.5 CH 1.0 |
| Recertification | 1.5 | 1.5 | n/a | n/a |
| Routine | 1.0 | 1.0 | 1.0 | 1.0 |
| Hi-Tech 1.5 | 1.5 | | 1.5 | |
| Hi-Tech Extended 2-3 Hours | 2.5 | 1.5 | 2.5 | |
| Hi-Tech Extended 3-4 Hours | 3.5 | n/a | 3.5 | |
| Hi-Tech Extended 4-5 Hours (HS Only) | n/a | n/a | 4.5 | |
| Continuous Care Evaluation | n/a | n/a | 1.5 | 1.5 |
| Continuous Care | n/a | n/a | 1.0 | n/a |
| Discharge with Visit | 1.0 | 1.0 | 1.5 | 1.0 |
| Death At Home | n/a | n/a | 1.5 | 1.0 |
| Bereavement Visit | n/a | n/a | 1.0 | 1.0 |
| Bereavement Phone Call | n/a | n/a | n/a | 1.0 |
| Initiation Visit | n/a | n/a | 1.0 | 1.0 |
| Injection | 0.8 | n/a | .8 | n/a |
| Phone Visit (SW & CH Only) | n/a | n/a | .25 | 1.0 |
| Discharge & TIF (non-visit) | n/a | 0.5 | n/a | n/a |
| Sick & Vacation Points | Up to 5 - 7 points/day | | Up to 5 - 7 points/day | |

84.     EHC described this type of payroll structure as a "point system." An employee could earn his base "salary" plus additional "Productivity" if he earned sufficient points above the weekly minimum. However, no overtime was paid to any employee subject to the "Productivity Requirements per Week" and "Visit Productivity Values" payroll scheme.

85.     If an employee who was subject to the "Productivity Requirements per Week" missed all or part of a work day, or did not meet the "Productivity Requirements per Week" minimum, that employee's pay would be reduced.

86.     These workers' pay was subject to deductions based on the quantity of work performed in a work week.

87.     Plaintiffs, and all similarly situated employees were not paid a "guaranteed minimum" salary regardless of the amount of time worked or amount of work performed.

88.    Defendants required employees subject to the Productivity Requirements per Week to use "Paid Days Off" (PDO) to offset unachieved minimum visits, in full day, half day or hourly increments.

89.    If an employee did not have sufficient PDO to offset missed time from a work week, that employees' "salary" would be reduced.

90.    Defendant's "salary," as applied to Plaintiffs and similarly situated employees was, in fact, an hourly payroll structure, as the "Productivity Values" and "Productivity Requirements per Week" reflected the amount of time in hours needed to perform the identified tasks and these workers were not paid if these tasks were not performed.

91.    Defendants required their employees, such as Plaintiffs to track their work time on the employee's "electronic timesheet" and thus has a record of the actual time worked by Plaintiffs and Collective Members.

### COVERAGE UNDER THE FLSA

92.    Defendant West Mississippi is and has been an employer within the meaning of 29 U.S.C. §203(d).  West Mississippi Home Health Services, Inc., at all pertinent times, directly employed Plaintiffs and similarly situated employees who were former employees in the Camellia companies.

93.    Defendant CMS is and has been an employer within the meaning of 29 U.S.C. §203(d) as CMS provided human resources services to the Camellia company employees, directed the manner by which they were paid, and issued guidelines in its Camellia Home Health & Hospice employee handbook that the Camellia company employees were required to follow until May 1, 2018.

94.     Beginning on May 1, 2018 through the present, Defendant, EHC is and has been an employer of Plaintiffs and all Collective Members within the meaning of 29 U.S.C. §203(d), as EHC has implemented rules, regulations, policies and procedures contained within its handbook which include, but are not limited to, classification under the FLSA that are applicable to Plaintiffs and all EHC employees paid on a "point system."

95.     Beginning on May 1, 2018 through the present, Defendant, EHHS is and has been an employer of Plaintiffs and all similarly situated employees within the meaning of 29 U.S.C. §203(d), as EHHS has implemented rules, regulations, policies and procedures contained within its employee handbook which include, but are not limited to, classification under the FLSA that are applicable to Plaintiffs and all EHC employees paid on a "point system."

96.     Beginning on May 1, 2018 through the present, Defendant, AMC is and has been an employer of Plaintiffs and all similarly situated employees within the meaning of 29 U.S.C. §203(d) for the reasons alleged above which include, but are not limited to AMS's tracking employee hours and issuing payroll, implementing rules, regulations, policies and procedures applicable to Plaintiffs and contained within its employee handbook which include, but are not limited to, classification under the FLSA.

97.     Beginning May 1, 2018 to the present, all Defendants have acted as an "Enterprise" within the meaning of 29 U.S.C. §203(r)(1), as all Defendants have a common business purpose of utilizing employees such as Plaintiffs to provide medical care services to patients through the use of related entitles which are commonly owned, operated and managed through common employees, officers and directors.

98.     All Defendants have been an "Enterprise" engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. §203(s)(1) as their

employees including Plaintiffs and all Collective Members utilize goods moved in commerce such as medical supplies, medical devices, and office supplies.

99.    Defendants have each had an annual gross volume of sales made or business done of not less than $500,000.00, exclusive of excise taxes at the retail level, as required by 29 U.S.C. §203(s)(A)(ii).

100.    As indicated in its 2019 Annual Report, EHC and its subsidiaries, EHHS and AMC reported net income of $445,800,000.00 in 2019, and $375,400,000.00 in 2018. Further, EHC's 2019 Annual Report states that the Camellia companies generated $50,000,000.00 in revenue in 2018.

### FLSA VIOLATIONS

101.    Plaintiff May regularly worked over forty (40) hours per week and was not paid overtime, in violation of the FLSA. For example, for the week of March 17, 2019 to March 23, 2019, Plaintiff May worked at least seventy-one (71) hours, forty (40) of which were paid at his straight time rate of $50.48 per hour and thirty-one (31) of which were paid at $50.00 per hour.

102.    For the week of March 3, 2019 to March 9, 2019, Plaintiff May worked at least seventy-seven (77) hours, forty (40) of which were paid at his straight time rate of $50.48 and thirty-three (33) of which were paid at $50.00 per hour.

103.    For the week of February 17, 2019 to February 23, 2019, Plaintiff May worked at least sixty-five (65) hours, forty (40) of which were paid at his straight time rate of $50.48 and twenty-five (25) of which were paid at $50.00 per hour.

104.    For the week of February 3, 2019 to February 9, 2019, Plaintiff May worked at least fifty-six and one-tenth (56.10) hours, forty (40) of which were paid at his straight time rate of $50.48 and 16.10 of which were paid at $50.00 per hour.

105.    Plaintiff James likewise regularly worked over forty (40) in a work week and generally worked 50-55 hours.

106.    Defendants maintain a computer software program that tracks Plaintiffs' and all Collective Members' time and thus, the amount of hours worked by Plaintiffs and the collective members can be calculated with certainty utilizing Defendants' records.

107.    Pursuant to the FLSA, 29 U.S.C. §207, employers such as Defendants are generally required to pay overtime compensation at an hourly rate of 150% of an employee's regular rate of pay for all hours worked over forty (40) in a work week.

108.    Defendants have violated, and are continuing to violate, the provisions of §207 and §215(a)(2) of the FLSA by not paying it's "point system" employees, like Plaintiffs and the Collective Members who are subject to "Productivity Requirements per Week" overtime.

109.    Defendants have violated, and are violating the FLSA by not paying overtime to Plaintiffs, and the Collective Members because they are not "salaried employees" and thus not eligible for the professional exemption under §213(a)(1) of the FLSA.

110.    Defendants, as joint employers of Plaintiffs and the Collective Members, knowingly, willfully, or in reckless disregard implemented and maintained an illegal practice of failing to pay Plaintiffs and the Collective Members overtime for all hours worked over forty (40) hours within the last three (3) years.

111.    Defendants compensation scheme applicable to Plaintiffs and the Collective Members failed to comply with the overtime requirements of the FLSA and does not qualify for any FLSA overtime exemption.

112.    Defendants CMS and West Mississippi were notified by the U.S. Department of Labor in 2017 that it's "per visit" compensation scheme did not meet the salary/fee basis test for the professional exemption under the FLSA.

113.    Defendants EHC and/or EHHS and/or AMC's "point system" is not materially different than the Camellia companies' "per visit" payroll compensation system and equally violates the FLSA.

114.    The DOL's determination, and the Camellia companies' reclassification of its "per visit" employees as FLSA non-exempt was known by and/or imputed to EHC and/or EHHS and/or AMC.

115.    Despite such knowledge EHC and/or EHHS and/or AMC implemented its "points system" with full knowledge that said system violated the FLSA.

**COLECTIVE ACTION ALLEGATIONS**

116.    Plaintiffs bring this action for violation of 29 U.S.C. §216(b) of the FLSA on behalf of the following collective:

> All individuals who are or were employed by Encompass Health Corp. and/or Encompass Home Health of the Southeast, LLC and/or Advanced Homecare Management, Inc., including employees of West Mississippi Home Health Services, Inc. and Camellia Medical Systems, Inc., who were subject to the "Productivity Requirements per Week" provision in The Encompass Health Way employee handbook, within the last three (3) years, and who were not paid an overtime premium for hours worked in excess of forty (40) per work week.

117.    Plaintiffs reserve the right to redefine the Collective prior to notice or conditional certification, and thereafter as may be warranted or necessary.

118.    According to the Encompass Health Way employee handbook, the productivity requirements per week payroll scheme applied to Registered Nurses (RN), Licensed Practical Nurses (LPN), Speech Therapists (ST), Physical Therapists (PT), Occupational Therapists (OT), Speech and Language Pathologists (LSP), Physical Therapy Assistants (PTA), Certified Occupational Therapy Assistants (COTA), Masters of Social Welfare (MSW) and Home Health Aids (HHA).    Individuals performing these jobs are included in the Collective.

119.    The Collective Members are all subject to Defendants' unlawful compensation practice and are collectively all subject to the "Productivity Requirements per Week" or "point system" payroll scheme and are similarly situated to Plaintiffs in terms of job duties, pay and employment practices.

120.    Defendants' failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice of paying a salary which does not meet the salary requirements of the FLSA and is instead an hourly rate of pay and is not dependent on the personal circumstances of any individual employee.    Thus, Plaintiffs and the Collective Members are similarly situated.

121.    The specific job titles or precise job requirements of the Collective Members does not prevent collective treatment.    All employees, regardless of their precise job requirements or rates of pay are all subject to Defendants' "point system" payroll scheme which violates the FLSA.

122.    The size and identity of the Collective can be readily ascertained from Defendants' payroll and employee records.

**WHEREFORE,** Plaintiffs, individually and on behalf of all similarly situated employees pray for judgment in their favor and against Defendants as follows:

1.   For an Order recognizing this proceeding as a collective action under §216(b) of the FLSA and ordering notice to the Collective Members at the earliest opportunity to ensure Collective Members' claims are not lost to the FLSA statute of limitations;

2.   For an Order finding Defendants liable for unpaid overtime due to Plaintiffs and the Collective Members and for liquidated damages equal in amount to the unpaid compensation;

3.   For an award of costs of this action as provided under the FLSA;

4.   For an award of attorneys' fees as provided under the FLSA;

5.   For an award of pre- and post-judgment interest; and

6.   For any and all other and further relief as may be necessary and appropriate;

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted:


By: _/s/ Philip Bohrer_____
        Philip Bohrer
        phil@bohrerbrady.com
        Scott E. Brady
        scott@bohrerbrady.com
        BOHRER BRADY, LLC
        8712 Jefferson Highway, Suite B
        Baton Rouge, Louisiana  70809
        Telephone: (225) 925-5297
        Facsimile: (225) 231-7000

-and-

/s/ *Joel Dillard*
Joel Dillard
JOEL F. DILLARD, P.A.
775 N. Congress Street
Jackson, MS 39202
Telephone: (601) 487-7369
joel@joeldillard.com
MS Bar No. 104202

*Counsel for Plaintiffs and Putative Collective*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 20th day of August, 2020 with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/ *Philip Bohrer*
Philip Bohrer

21